1  BENJAMIN B. WAGNER
   United States Attorney
2  JILL M. THOMAS
   Assistant United States Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700
   Facsimile: (916) 554-2900
5
6  Attorneys for Plaintiff
   United States of America
7



**FILED**

MAR 2 0 2015

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
       DEPUTY CLERK

8          IN THE UNITED STATES DISTRICT COURT

9          EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,          CASE NO. 2:10-CR-0347 MCE

12                     Plaintiff,      PLEA AGREEMENT

13        v.                           DATE: March 19, 2015
                                       TIME: 9:00 a.m.
14  IMESH PERERA,                      COURT: Hon. Morrison C. England, Jr.

15                     Defendant.

16

17              I.      **INTRODUCTION**

18  A.    **Scope of Agreement**

19          The indictment in this case charges the defendant with two violations of 21 U.S.C. sections

20  841(a)(1) and 846, conspiracy to distribute and to possess with intent to distribute MDMA

21  (Methylenedioxymethamphetamine) and BZP (Benzylpiperazine) (Count One) and conspiracy to

22  distribute and to possess with intent to distribute cocaine (Count Two); and a violation of 21 U.S.C.

23  section 841(a)(1), distribution of MDMA, BZP, and cocaine (Count Three); a violation of 21. U.S.C.

24  section 841(a)(1), distribution of MDMA and BZP (Count Four). The indictment also includes a

25  criminal forfeiture allegation. This document contains the complete plea agreement between the United

26  States Attorney's Office for the Eastern District of California (the "government") and the defendant

27  regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern

28  District of California and cannot bind any other federal, state, or local prosecuting, administrative, or

regulatory authorities.

**B.**   **Court Not a Party**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities that may not have been charged in the indictment. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.   **DEFENDANT'S OBLIGATIONS**

**A.**   **Guilty Plea**

The defendant will plead guilty to Count One of the indictment, conspiracy to distribute and to possess with intent to distribute MDMA and BZP in violation of 21 U.S.C. sections 841(a)(1) and 846. The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis For Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

1 | The defendant acknowledges that the crime to which he is pleading guilty is listed in 18 U.S.C.

2 | § 3143(a)(2), and agrees that he will be remanded into custody upon the entry of his plea.

3 | **B.**   **Special Assessment**

4 | The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering

5 | a check or money order payable to the United States District Court immediately before the sentencing

6 | hearing. The defendant understands that this plea agreement is voidable at the option of the government

7 | if he fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special

8 | assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by

9 | participating in the Inmate Financial Responsibility Program.

10 | **C.**   **Agreement to Cooperate**

11 | The defendant agrees to cooperate fully with the government and any other federal, state, or local

12 | law enforcement agency, as directed by the government. As used in this plea agreement, "cooperation"

13 | requires the defendant: (1) to respond truthfully and completely to all questions, whether in interviews,

14 | in correspondence, telephone conversations, before a grand jury, or at any trial or other court

15 | proceeding; (2) to attend all meetings, grand jury sessions, trials, and other proceedings at which the

16 | defendant's presence is requested by the government or compelled by subpoena or court order; (3) to

17 | produce voluntarily any and all documents, records, or other tangible evidence requested by the

18 | government; (4) not to participate in any criminal activity while cooperating with the government; and

19 | (5) to disclose to the government the existence and status of all money, property, or assets, of any kind,

20 | derived from or acquired as a result of, or used to facilitate the commission of, the defendant's illegal

21 | activities or the illegal activities of any conspirators.

22 | **D.**   **Defendant's Violation of Plea Agreement or Withdrawal of Plea**

23 | If the defendant, cooperating or not, violates this plea agreement in any way, withdraws his plea,

24 | or tries to withdraw his plea, this plea agreement is voidable at the option of the government. The

25 | government will no longer be bound by its representations to the defendant concerning the limits on

26 | criminal prosecution and sentencing as set forth herein. One way a cooperating defendant violates the

27 | plea agreement is to commit any crime or provide any statement or testimony which proves to be

28 | knowingly false, misleading, or materially incomplete. Any post-plea conduct by a defendant

PLEA AGREEMENT                                    3

constituting obstruction of justice will also be a violation of the agreement. The determination whether the defendant has violated the plea agreement shall be decided under a probable cause standard.

If the defendant violates the plea agreement, withdraws his plea, or tries to withdraw his plea, the government shall have the right: (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including perjury, false statements, and obstruction of justice. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision to exercise the options stated in the previous paragraph. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement.

In addition: (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

1

## III.     THE GOVERNMENT'S OBLIGATIONS

2

### A.    Dismissals

3        The government agrees to move, at the time of sentencing, to dismiss without prejudice the

4 remaining counts in the pending indictment. The government also agrees not to reinstate any dismissed

5 count except if this agreement is voided as set forth herein, or as provided in paragraphs III.B.3

6 (Cooperation), II.D (Defendant's Violation of Plea Agreement), VI.B (Guidelines Calculations), and

7 VII.B (Waiver of Appeal) herein.

8

### B.    Recommendations

9          1.    Incarceration Range

10        The government will recommend that the defendant be sentenced to the low end of the

11 applicable guideline range for his offense, as determined by the Court.

12          2.    Acceptance of Responsibility

13        The government will recommend a two-level reduction (if the offense level is less than

14 16) or a three-level reduction (if the offense level reaches 16) in the computation of defendant's offense

15 level if he clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. §

16 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of

17 the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging

18 in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the

19 preparation of the pre-sentence report or during the sentencing proceeding.

20          3.    Reduction of Sentence for Cooperation

21        The government agrees to recommend at the time of sentencing that the defendant's

22 sentence of imprisonment be reduced by up to 50% of the applicable guideline sentence if he provides

23 substantial assistance to the government, pursuant to U.S.S.G. § 5K1.1. The defendant understands that

24 he must comply with paragraph II.C (Agreement to Cooperate) and not violate this plea agreement, as

25 set forth in paragraph II.D (Defendant's Violation of Plea Agreement) herein. The defendant

26 understands that it is within the sole and exclusive discretion of the government to determine whether

27 the defendant has provided substantial assistance.

28          The defendant understands that the government may recommend a reduction in his

1  sentence of less than 50% or no reduction at all; depending upon the level of assistance the government
2  determines that the defendant has provided.

3          The defendant further understands that a motion pursuant to U.S.S.G. § 5K1.1 is only a
4  recommendation and is not binding on the Court, that this plea agreement confers no right upon the
5  defendant to require that the government make a § 5K1.1 motion, and that this plea agreement confers
6  no remedy upon the defendant in the event that the government declines to make a § 5K1.1 motion.  In
7  particular, the defendant agrees not to try to file a motion to withdraw his guilty plea based on the fact
8  that the government decides not to recommend a sentence reduction or recommends a sentence
9  reduction less than the defendant thinks is appropriate.

10          If the government determines that the defendant has provided further cooperation within
11  one year following his sentencing, the government may move for a further reduction of his sentence
12  pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

13        **C.**   **Use of Information for Sentencing**

14          The government is free to provide full and accurate information to the Court and the United
15  States Probation Office ("Probation"), including answering any inquiries made by the Court and/or
16  Probation, and rebutting any inaccurate statements or arguments by the defendant, his attorney,
17  Probation, or the Court.  The defendant also understands and agrees that nothing in this Plea Agreement
18  bars the government from defending on appeal or collateral review any sentence that the Court may
19  impose.

20          Further, other than as set forth above, the government agrees that any incriminating information
21  provided by the defendant during his cooperation will not be used in determining the applicable
22  guideline range, pursuant to U.S.S.G. § 1B1.8., unless the information is used to respond to
23  representations made to the Court by the defendant, or on his behalf, that contradict information
24  provided by the defendant during his cooperation.

25          **IV.**   **ELEMENTS OF THE OFFENSE**

26          At a trial, the government would have to prove beyond a reasonable doubt the following
27  elements of the offense(s) to which the defendant is pleading guilty:

28          As to Count One, conspiracy to distribute and to possess with intent to distribute MDMA and

BZP in violation of 21 U.S.C. sections 841(a)(1) and 846.:

1.　　　First, beginning and ending on the dates stated in the indictment, there was an agreement between two or more persons to commit the crim of distribution and possession with intent to distribute MDMA and BZP; and

2.　　　Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it..

The defendant fully understands the nature and elements of the crimes charged in the indictment to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V.　　MAXIMUM SENTENCE

### A.　Maximum Penalty

The maximum sentence that the Court can impose is is up to twenty (20) years of incarceration, a fine of $1,000,000, at least a three year period of supervised release up to life, and a special assessment of $100. The defendant may be ineligible for certain federal and/or state assistance and/or benefits, pursuant to 21 U.S.C. § 862.

### B.　Violations of Supervised Release

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two years of additional imprisonment.

## VI.　　SENTENCING DETERMINATION

### A.　Statutory Authority

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either

1 | above or below the guideline sentencing range) because there exists an aggravating or mitigating

2 | circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing

3 | Commission in formulating the Guidelines.  The defendant further understands that the Court, after

4 | consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable

5 | in light of the factors set forth in 18 U.S.C. § 3553(a).

6 | **B.   Estimation as to Guideline Calculations**

7 | The United States Probation Office prepared a "Pre-Plea Guideline Calculations Report" in

8 | anticipation of resolution of this case.  Those guidelines are listed below in paragraph IV.B.1.

9 | The government and the defendant agree that the following is their present best estimate of the

10 | sentencing guidelines variables.  These estimates shall not be binding on the Court, the Probation Office,

11 | or the parties:

12 |        1.   Drug and Drug Qunatity – the parties agree and stipulate that the amount of
controlled substances constituting defendant's relevant conduct for jointly undertaken

13 | criminal activity (within the meaning of U.S.S.G. § 1B1.3(a)(1)(B) is as follows:[1]

| Date of Seizure | Substance | Weight |
|---|---|---|
| May 21, 2009 | BZP, Cocaine, MDMA | 295.3 grams BZP |
| | | 28.1 grams cocaine |
| | | 253.7 grams MDMA |
| June 18, 2009 | BZP, MDMA | 174 grams of MDMA |
| | | 89.1 grams of BZP |
| April 25, 2010 | MDMA[2] | 500 grams |
| April 27, 2010 | Cocaine | 250 grams |
| April 29, 2010 | BZP[3] | 250 grams |

[1] The Probation Officer also referenced a May 5, 2010 seizure of 170.1 grams of cocaine.  An inquiry with the Drug Enforcement Administration, however, revealed that there were no records to support the May 5, 2010 seizure.  That amount has therefore been removed from the stipulation in this section.

[2] Application Note 11 to U.S.S.G. section 2D1.1 provides for a typical dosage chart to be used when the number of doses, pills, or capsules are known, but not the actual weight of the substance.  The figures for April and May 2010 are based on the chart in Note 11.

[3] The content of intercepted conversations related to the April 29, 2010 and May 11, 2010 transactions (Michael Tran as supplier) supports that the parties were discussing two ecstasy or MDMA transactions – the first for 1,000 pills and the second for 500 pills.  However, the lower guidelines

| May 9, 2010 | MDMA | 250 grams[4] |
| May 12, 2010 | BZP | 125 grams |

Totals:  The MDMA equals 1,177 grams; the BZP equals 759.4 grams; and the cocaine seized equals 28.1 grams.

    2.   Base Offense Level:  The drug types and quantities above, the conversion to the marijuana equivalency pursuant to U.S.S.G. § 2D1.1, application note 10(B), and the drug equivalency table in U.S.S.G. § 2D1.1, application note 10(D) results in the following calculation of marijuana equivalency:

| Substance | Weight | Marijuana Equivalent |
| --- | --- | --- |
| BZP | 759.4 x 100g | 75.94 KG |
| MDMA | 1,177 x 500g | 588.85 KG |
| Cocaine | 278.1 x 200g | 55.62 KG |
| **Total** | | **720.41 KG** |

    U.S.S.G. § 2D1.1(c)(4) provides that the base offense level for 720.41 KG of marijuana is **28** ("At least 700 KG but less than 1,000 KG Marihuana").

    3.   Acceptance of Responsibility:  -3 See paragraph III(B)(2) above.

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, except that the government may move for a departure or adjustment based on defendant's post-plea obstruction of justice (§3C1.1) or defendant's cooperation (§5K1.1).  Both parties agree not to move for, or argue in support of, any departure from the Sentencing Guidelines, or any deviance or variance from the Sentencing Guidelines under United States v. Booker, 543 U.S. 220

---

applicable to BZP should be used to determine the sentence.  Later intercepted conversations reveal that Michael Tran supplied BZP instead of MDMA for these transactions.  When the evidence about the substance involved in the offense is contradictory or otherwise inconclusive, the lower guidelines should be used. See United States v. Hunt, 656 F.3d 906, 915-16 (9th Cir. 2011) (Ambiguity regarding sentence applicable to controlled substance should be resolved in favor of lesser amount to avoid issues under Apprendi v. New Jersey, 530 U.S. 466 (2000)).

[4] Imesh Perera believes that the pills he supplied co-defendant Gachago were BZP.  Jeremy Gachago believes that the pills that Imesh Perera supplied him were MDMA; Gachago pleaded guilty to unlawful use of a communication facility, which included the fact that Gachago purchased MDMA. C.R. 255.  The pills were not tested. The defense is free to object to the final guideline calculation should the guideline calculation conclude that the pills were MDMA.  Should the Court find that the pills were in fact MDMA, Imesh Perera will not be permitted to withdraw his guilty plea.

1   (2005).

2         The defendant also agrees that the application of the United States Sentencing Guidelines to his

3   case results in a reasonable sentence, and that the defendant will not request that the Court apply the

4   sentencing factors under 18 U.S.C. § 3553 to arrive at a different sentence than that called for under the

5   Sentencing Guidelines' advisory guideline range as determined by the Court. The defendant

6   acknowledges that if the defendant requests or suggests in any manner a different sentence than what is

7   called for under the advisory guideline range as determined by the Court, the plea agreement is voidable

8   at the option of the government. The government, in its sole discretion, may withdraw from the plea

9   agreement and continue with its prosecution of the defendant as if the parties had never entered into this

10  plea agreement.

11  **VII.     WAIVERS**

12       **A.    Waiver of Constitutional Rights**

13        The defendant understands that by pleading guilty he is waiving the following constitutional

14  rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to

15  be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to

16  testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be

17  compelled to incriminate himself.

18       **B.    Waiver of Appeal and Collateral Attack**

19        The defendant understands that the law gives the defendant a right to appeal his guilty plea,

20  conviction, and sentence. The defendant agrees as part of his plea/pleas, however, to give up the right to

21  appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not

22  exceed the top of the applicable advisory sentencing guideline calculation as determined by the Court.

23  The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

24        Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if

25  one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the

26  statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant

27  understands that these circumstances occur infrequently and that in almost all cases this Agreement

28  constitutes a complete waiver of all appellate rights.

1   In addition, regardless of the sentence the defendant receives, the defendant also gives up any

2   right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any

3   aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

4   Notwithstanding the agreement in paragraph III.A (Dismissals) above that the government will

5   move to dismiss counts against the defendant, if the defendant ever attempts to vacate his plea, dismiss

6   the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading

7   guilty, the government shall have the rights set forth in paragraph II.D (Defendant's Violation of Plea

8   Agreement) herein.

9   **C.   Waiver of Attorneys' Fees and Costs**

10   The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-

11   119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the

12   investigation and prosecution of all charges in the above-captioned matter and of any related allegations

13   (including without limitation any charges to be dismissed pursuant to this plea agreement and any

14   charges previously dismissed).

15   **D.   Impact of Plea on Defendant's Immigration Status**

16   Defendant recognizes that pleading guilty may have consequences with respect to his

17   immigration status if his is not a citizen of the United States. Under federal law, a broad range of crimes

18   are removable offenses, including offense(s) to which the defendant is pleading guilty. Indeed, because

19   defendant is pleading guilty to a violation of 21 U.S.C. sections 841(a)(1) and 846, Conspiracy to

20   Distribute and to Possess with Intent to Distribute MDMA and BZP, removal is presumptively

21   mandatory. Removal and other immigration consequences are the subject of a separate proceeding,

22   however, and defendant understands that no one, including his attorney or the district court, can predict

23   to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that

24   he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the

25   consequence is his automatic removal from the United States.

26   **VIII.   ENTIRE PLEA AGREEMENT**

27   Other than this plea agreement, no agreement, understanding, promise, or condition between the

28   government and the defendant exists, nor will such agreement, understanding, promise, or condition

1 | exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and
2 | counsel for the United States.

3 | ### IX.   APPROVALS AND SIGNATURES

4 | **A.**   **Defense Counsel:**

5 | I have read this plea agreement and have discussed it fully with my client.  The plea agreement
6 | accurately and completely sets forth the entirety of the agreement.  I concur in my client's decision to
7 | plead guilty as set forth in this plea agreement.

8 | Dated:   3. 19 – 15

JAY TONEY
Counsel for Defendant

10 | **B.**   **Defendant:**

11 | I have read this plea agreement and carefully reviewed every part of it with my attorney.  I
12 | understand it, and I voluntarily agree to it.  Further, I have consulted with my attorney and fully
13 | understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my
14 | case.  No other promises or inducements have been made to me, other than those contained in this plea
15 | agreement.  In addition, no one has threatened or forced me in any way to enter into this plea agreement.
16 | Finally, I am satisfied with the representation of my attorney in this case.

17 | Dated:   3 -19 -15

IMESH PERERA, Defendant

19 | **C.**   **Attorney for United States:**

20 | I accept and agree to this plea agreement on behalf of the government.

21 | Dated:   3/19/15

BENJAMIN B. WAGNER
United States Attorney

JILL M. THOMAS
Assistant United States Attorney

PLEA AGREEMENT

1

**EXHIBIT "A"**

2

**Factual Basis for Plea**

3
 If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

4

5
 This case results from an investigation conducted by the Drug Enforcement Administration (DEA) and the Placer County Narcotics Investigation Unit (PCNI Unit). Defendant Imesh Perera and his brother and co-defendant Dishan Perera came to the attention of the investigating agencies in April 2009. Both brothers were suspected of distributing cocaine, MDMA, and BZP in the Eastern District of California. The investigation proceeded over the course of of about eighteen months in two phases. The first phase involved controlled purchases, while the second phase used court-authorized wiretaps of phones belonging to both Perera brothers.

6

7

8

9
 **Phase One:  Controlled Purchases**

10
 **May 21, 2009 - Purchase of Cocaine, MDMA, and BZP**

11
 On May 21, 2009, Dishan and Imesh Perera met with an undercover officer ("UC") in a restaurant parking lot in Roseville, CA. The brothers delivered a brown bag to the UC containing three plastic bags with pills and powder inside them. One bag had 1,000 yellow pills, another had 1,000 orange pills, and the third contained a white-powdery substance. Lab analysis later revealed that the pills consisted of 295.3 grams of BZP and 253.7 grams of MDMA. The powder proved to 28.1 grams of cocaine. Latent fingerprints lifted off the packaging of the orange pills matched both Imesh and Dishan Perera's fingerprints.

12

13

14
 **June 18, 2009 – Purchase of MDMA and BZP**

15

16
 On June 18, 2009, the UC met with Imesh Perera outside of a sandwich shop in Roseville, CA. Surveillance officers observed Imesh Perera waiting until a car driven by co-defendant Leonard Woodfork arrived. Imesh Perera then retrieved an orange backpack from the front seat of that car. Imesh Perera opened the backpack to reveal to the UC that it contained 1,000 yellow and red pills. Imesh Perera sold the pills to the UC. Lab results confirmed that the 300 red pills were Benzylpiperazine (BZP), weighing 89.1 grams. The 700 yellow pills contained MDMA, weighing 174 grams.

17

18

19
 **Phase Two:  Intercepted Telephone Calls and Search Warrants**

20
 **April 25, 2010 – 2,000 MDMA pills ordered**

21

22
 On April 24, 2010, Imesh Perera received a call from an unidentified male requesting to order "two boats," meaning 2,000 MDMA pills. The next day, April 25, the unidentified caller confirmed the order. Imesh Perera then called co-defendant Navpreet Singh and ordered "two Saints." Imesh asked for the pills at "21," meaning $2,100 for each thousand MDMA pill order. He further told Navpreet Singh that he intended to sell them for "23-50," meaning $2,350 for each 1,000 MDMA pill order. Singh agreed to obtain the pills from "his guys."

23

24

25
 Surveillance later confirmed a meeting at a park in Elk Grove, CA between Navpreet Singh and Imesh Perera. Agents identified Navpreet Singh sitting in the passengers's seat of Imesh Perera's car during a brief meeting between the two near the park. Imesh later called unidentified buyer and confirmed that he was able to obtain "the two Saints" that the caller requested. Imesh Perera then arranged for Leonard Woodfork to meet with the buyer at a burger restaurant off Madison Avenue in Sacramento. Later intercepted calls captured Imesh Perera instructing Woodfork on where to park to avoid looking "hot." The content of the calls as well as the observations by officers conducting

26

27

28

surveillance confirmed that the meeting between Woodfork and the unidentified third-party buyer for exchange of 2,000 MDMA pills occurred on April 25, 2010.

### April 27, 2010 – controlled cocaine purchase

Intercepted conversations revealed that Ramiro Garcia supplied one quarter of a kilogram of cocaine to Dishan Perera between April 27 and May 5, 2010.

On April 27, 2010, Dishan Perera called Ramiro Garcia. Perera requested a quarter kilogram (or about nine ounces) of cocaine for "57-50" (meaning $5,750) instead of "58" ($5,800). Garcia agreed to that price. The two then discussed how to divide and cut the powder cocaine. Later that same evening, Dishan Perera called Ramiro Garcia and confirmed that he had received the cocaine. Following that conversation, Dishan Perera called an unidentified purchaser and said "I got some fire, some bomb-ass shit." Dishan Perera had used the same terms to describe cocaine that he sold to an undercover officer earlier in the investigation. Dishan Perera confirmed to the prospective purchaser that he was bringing a sample. On May 5, 2010, Dishan Perera called Ramiro Garcia and asked to pick up the remainder of his order. Ramiro Garcia agreed to meet Dishan Perera at a Quizno's restaurant in Roseville. Surveillance officer observations and intercepted telephone calls corroborated that the meeting took place between Dishan Perera and Ramiro Garcia that evening.

### April 29, 2010 – 1,000 BZP pills ordered

On April 28, 2010, Imesh Perera received a call from an unidentified caller requesting that Imesh Perera find out what kind of pills were available. Imesh Perera ordered "one," meaning one thousand from co-defendant Michael Tran. Tran responded that the price would be "Twenty-one, fifty," meaning $2,150 for each 1,000 BZP pill order.

On April 29, 2010, Imesh called Tran to confirm that he was on his way to meet with him at a Rite-Aid store. Surveillance officers observed Tran and Imesh meeting in the parking lot of a Rite-Aid store off Florin Road. CHP later conducted a traffic stop on Tran's car for speeding and confirmed Tran was the driver. Based on the content of the intercepted telephone calls, surveillance observations, the traffic stop of Tran, and later intercepted calls between Tran and Imesh Perera, Imesh Perera obtained 1,000 BZP pills from Tran to distribute to an unidentified third-party buyer.

### May 9, 2010 – 1,000 MDMA pills ordered

On May 4, 2010, Imesh Perera called co-defendant Jeremy Gachago. Gachago indicated that he was in Los Angeles, CA, but he planned on returning to Sacramento soon. Gachago told Imesh Perera, "I wanna cop a boat," usually meaning buy 1,000 MDMA pills. Imesh Perera offered the pills at "24-50," meaning $2,450 for 1,000 pill order. Gachago told Imesh that he had a customer in L.A. who will buy them for "25." The next day Gachago called Dishan Perera and requested his bank account information. Dishan Perera sent back a text message with his account number. Gachago was later intercepted telling Dishan Perera that he was at the bank.

On May 9, 2010, Gachago called Imesh Perera and told him, "I got all of those pills off." The intercepted calls confirmed that a 1,000 pill transaction took place between Gachago and the Perera brothers. Gachago believed the pills he received from Imesh Perera to be MDMA and this fact was included in Gachago's factual basis supporting his guilty plea to unlawful use of a communication facility. Imesh Perera believed that the pills were BZP. The pills were not tested.

1

### May 11, 2010 – 500 MDMA or BZP pills ordered

2       On May 3, 2010, co-defendant Jason Cavileer called Imesh Perera and asked, "what's up with that half-boat?"  During the phone call, Cavileer complained to Imesh that pills previously obtained

3   from him (April 29 transaction) were "straight pipers."  (The term "pipers" is slang for Benzylpiperazine or BZP.)  Cavileer also argued with Imesh about the quality of the pills and said, "they're all

4   piperazine."  Cavileer indicated that he could still "move 'em through."

5       On May 11, 2010, Imesh Perera received a call from Cavileer.  Cavileer indicated that he still wanted a "half of thizzles," meaning 500 MDMA or BZP pills.  Cavileer insisted, "I've got people who

6   want them."  The next day, May 12, 2010, Imesh Perera called Tran and confirmed an order for "half."  Imesh then called Cavileer and said, "Hey, I'm on the way to grab those things."  Cavileer responded,

7   "Hell yeah, time to make some money."  Surveillance confirmed an initial meeting between Imesh and Tran at a "Rainbow Foods" parking lot off Florin Road.  Imesh Perera left the parking lot and drove

8   straight to Cavileer's house in Citrus Heights, CA.  The intercepted calls and surveillance observations confirmed that a 500 MDMA or BZP pill transaction occurred between Imesh Perera, Michael Tran, and

9   Jason Cavileer.

10

11   Dated:    3 -19 -15              _Imesh  Perera_

                                             IMESH PERERA, Defendant

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A-3