UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 2:10-cr-0347-DAD-JDP (P) |
|---|---|
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| IMESH PERERA, | |
| Defendant. | |

Imesh Perera ("petitioner") has filed a petition for a writ of error coram nobis, arguing that his counsel's deficient performance caused him to plead guilty under the misapprehension that his plea would not necessarily result in his deportation. ECF No. 579 at 7-8. The government has filed an opposition, ECF No. 599, and petitioner has filed a reply, ECF No. 606. For the reasons stated below, the petition should be granted.

**Legal Standards**

A writ of error *coram nobis* "is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable." *United States v. Riedl*, 496 F.3d 1003, 1005 (9th Cir. 2007). "*Coram nobis* is an extraordinary writ that usually is available only to petitioners who have fully served their sentences." *United*

1

*States v. Monreal*, 301 F.3d 1127, 1131-32 (9th Cir. 2002). "The United States Supreme Court has held that district courts have the power to issue the writ under the All Writs Act, 28 U.S.C. § 1651(a)." *Matus-Leva v. United States*, 287 F.3d 758, 760 (9th Cir. 2002) (citing *United States v. Morgan*, 346 U.S. 502, 506-07 (1954)). To qualify for relief, a petitioner must demonstrate: "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987).

## Background

In August 2010, the government filed an indictment alleging that petitioner: conspired to distribute and possess with intent to distribute MDMA and BZP from on or about May 21, 2009, to August 3, 2010, in violation of 21 U.S.C. §§ 846 and 841(a)(1); conspired to distribute and possess with intent to distribute Cocaine from on or about May 21, 2009, to August 3, 2010, in violation of 21 U.S.C. §§ 846 and 841(a)(1); and distributed MDMA, BZP, and Cocaine on May 21 and June 18, 2009, in violation of 21 U.S.C. § 841(a)(1). ECF No. 55. Petitioner was born in Sri Lanka and was, at the time of the indictment, a lawful permanent resident of the United States. ECF No. 579 at 7. He was profoundly concerned about the effect of any conviction on his immigration status. *Id.* at 8.

Between October 2010 and May 2014, petitioner was represented by Mark Waecker. *Id.* at 9. On June 6, 2014, J. Toney was appointed to represent petitioner. ECF No. 363. On March 20, 2015, pursuant to a plea agreement, petitioner pled guilty to conspiracy with intent to distribute MDMA and BZP in violation of 21 U.S.C. §§ 841(a)(1) and 846. ECF No. 460 at 2. The government agreed to dismiss the remaining counts of the indictment without prejudice and to recommend that petitioner be sentenced at the low end of the applicable guideline range. *Id.* at 5. Petitioner was sentenced to fifty months' imprisonment with credit for fifty months' time served. ECF No. 491. He was also subject to a thirty-six-month term of supervised release. *Id.* The term of supervised release ended on September 9, 2018, without incident, and, more than two years later, on April 21, 2021, petitioner was arrested by Immigration and Customs Enforcement

agents and slated for deportation.  ECF No. 579 at 9.

**Analysis**

Petitioner argues that a writ of *coram nobis* should issue because his defense counsel, J. Toney, gave inaccurate advice about the immigration consequences of his guilty plea. *Id.* at 12. Specifically, he alleges that, despite the plea rendering his deportation virtually certain, Toney told him only that it was "possible." ECF No. 579-1 at 4.  Toney also told him that the language in the plea agreement indicating that deportation was a near certainty was only "standard language." *Id.* at 5.  Petitioner states that Toney thus put him at ease about pleading guilty, despite his immigration status being his paramount concern; if he had known about the actual likelihood of his deportation, he would have proceeded to trial. *Id.* at 4-6.  The elements of the writ are met, and, for the reasons discussed below, it should issue.

    **I.**    **A More Usual Remedy is Not Available**

The first element is met because, as petitioner points out, he is no longer in custody, and thus a more usual remedy is not available. *Id.* at 10.  "[W]hereas petitions for habeas corpus relief and motions for relief under 28 U.S.C. § 2255 may only be filed by persons who are in government custody, '[t]he writ of error coram nobis affords a remedy to attack a conviction when the petitioner has served his sentence and is no longer in custody.'" *United States v. Kwan*, 407 F.3d 1005, 1009 (9th Cir. 2005) (alterations in original).

    **II.**    **Valid Reasons Exist for not Attacking the Conviction Earlier**

The second element is more contentious.  The government contends that petitioner cannot show valid reasons for failing to attack his conviction between March 2015 and April 21, 2021.  I disagree.  Petitioner was not arrested by ICE agents until April 21, 2021.  ECF No. 579-1 at 9. He had no cause to act or to believe that Toney's advice was erroneous until that time.  Other courts have found that similar circumstances provide a valid basis for delaying an attack on a conviction. *See United States v. Akinsade*, 686 F.3d 248, 252 (4th Cir. 2012) ("[V]alid reasons exist for Akinsade not attacking the conviction earlier.  Until physically detained by immigration authorities in 2009, Akinsade had no reason to challenge the conviction as his attorney's advice, up to that point in time, appeared accurate.").  And it would make little sense to hold otherwise.

3

The Sixth Amendment guarantees a defendant adequate counsel on which he may rely. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). "Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered." *Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948). It is incompatible with that entitled reliance if a petitioner is required to second-guess his counsel's advice in a situation in which events have given him no cause to doubt it. Neither does it affect the analysis that petitioner was warned of the likelihood of deportation by both the text of the plea agreement and the court. In *United States v. Rodriguez-Vega*, the Ninth Circuit reasoned:

> [T]he government's arguments that counsel's performance was not ineffective because Rodriguez-Vega received notice that she might be removed from a provision in the plea agreement and the court's plea colloquy under Federal Rule of Criminal Procedure 11. The government's performance in including provisions in the plea agreement, and the court's performance at the plea colloquy, are simply irrelevant to the question whether counsel's performance fell below an objective standard of reasonableness.

797 F.3d 781, 787 (9th Cir. 2015). The government's contention that petitioner should have been aware of his likely deportation despite his attorney's advice is, thus, a non-starter. Accounting for *Rodriguez-Vega*, it makes little sense to demand that, to qualify for *coram nobis* relief, a petitioner must step outside the attorney-client relationship and interpret admonitions and warnings in the plea process for himself. Such a requirement would be especially baffling where, as here, counsel's advice appeared to be correct for many years.[1]

The government also contends that petitioner has failed to meet the second element by delaying the filing his petition between April 2021, when he became aware of the threat of deportation, and February 2023, when the immediate petition was filed. A writ of coram nobis is not subject to a specific limitations period. *United States v. Yuly Kroytor*, 977 F.3d 957, 961 (9th

---

[1] The government's contention that petitioner failed to demonstrate diligence because he did not contact immigration officials after his release is unavailing. The terms of petitioner's release did not mandate such contact, ECF No. 469, and there was no reason for petitioner himself to initiate such contact. Rather, the terms of his release commanded only that he cooperate with immigration officials. *Id.* at 17.

4

Cir. 2020). Instead, a petitioner satisfies the timeliness element if he can "provide valid or sound reasons explaining why they did not attack their sentences or convictions earlier." *Id.* (*Kwan*, 407 F.3d at 1012). As noted above, petitioner has valid and sound reasons for not raising his claim between 2015 and April 2021. As for the less-than-two-year period between April 21, 2021 and the filing of this petition, I find that petitioner has asserted valid reasons for this delay. Petitioner's counsel states that he was retained in July 2022 and that time was needed to obtain pertinent records, review the case, conduct legal research, and draft the petition. ECF No. 579-2 at 1-3. Additionally, petitioner states that part of the delay is attributable to his retention of separate counsel in a successful effort to vacate a state conviction in May 2022. ECF No. 579-2 at 9. Petitioner was only able to afford to retain current counsel in July 2022, after the state proceedings were completed. *Id.* at 9-10. These are sufficient reasons for a delay that, at less than two years, does not indicate abuse of the writ or create a real possibility of prejudice to the government.

Based on the foregoing, I find that the second element has been met.

### III.     Adverse Consequences Exist

The third element is also fulfilled. Courts have recognized that adverse consequences exist where a petitioner faces deportation because of the challenged conviction. *See Park v. California*, 202 F.3d 1146, 1148 (9th Cir. 2000) ("Because he faces deportation, Park suffers actual consequences from his conviction."); *Kwan*, 407 F.3d at 1014 ("It is undisputed that the possibility of deportation is an 'adverse consequence' of Kwan's conviction sufficient to satisfy Article III's case or controversy requirement.").

### IV.     Fundamental Error Exists

The fourth and final element is also met. To establish ineffective assistance, a petitioner must show two things: (1) that counsel's performance "fell below an objective standard of reasonableness" and (2) that petitioner suffered prejudice as a result. *Strickland*, 466 U.S. at 688-94. The first prong is met. Under the Supreme Court's decision in *Padilla v. Kentucky*, counsel in a criminal case renders ineffective assistance if they fail to advise their client of the risk of deportation. 559 U.S. 356, 374 (2010). Petitioner has submitted a declaration attesting to J.

Toney's misadvisement in this regard. ECF No. 579-1 at 4-5. Typically, weighing an ineffective assistance claim would involve input from the counsel accused of ineffectiveness. *Strickland*, 466 U.S. at 691 ("In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions."); *Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir. 2003) (en banc) ("It has long been the rule in the federal courts that, where a habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer."). Here, unfortunately, J. Toney passed away in 2021, and efforts to find any client file or notes he may have retained from petitioner's case have yielded nothing. ECF No. 579-2 at 2. As such, I am left only with petitioner's declaration. The government casts this as a fatal law preventing petitioner from carrying his burden under *Strickland*. ECF No. 599 at 8 ("In the absence of contemporaneous evidence from his defense attorneys, the defendant relies on his own, self-serving account of what he was told."). Petitioner should not be penalized, however, for circumstances entirely beyond his control. His inability to obtain information from his former counsel is a challenging circumstance, but hardly one that can be ascribed to him.[2] Thus, I credit petitioner's declaration and find the first prong of *Strickland* satisfied.

As to the second prong and the question of prejudice, in this instance petitioner must show that, but for his counsel's misadvisement, he would have proceeded to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have

---

[2] As petitioner's current counsel points out, it was Toney's responsibility under the rules of the California Bar to maintain petitioner's file. ECF No. 606 at 10. The circumstances of Toney's passing are not apparent from the docket, and I cannot tell whether the absence of records should be attributed to Toney. Regardless, it is another instance of petitioner being disadvantaged through no fault of his own.

The government also appears to fault petitioner for failing to obtain information from Mark Waecker, the defense counsel who preceded Toney. As the government itself acknowledges, however, it was Waecker who attempted to but could not find petitioner's file. Additionally, Waecker claimed to have no recollection of the representation and, thus, can provide no useful context. ECF No. 579-2 at 2.

pleaded guilty and would have insisted on going to trial."); *see also Lee v. United States*, 582 U.S. 357, 364-65 (2017) (same). In circumstances like the one at bar, where a petitioner's immigration status was of paramount importance, even the slimmest chance of success at trial is likely to be preferable to a plea that amounts to a virtual guarantee of deportation. In *Lee*, the Supreme Court analyzed a similar situation:

> We cannot agree that it would be irrational for a defendant in Lee's position to reject the plea offer in favor of trial. But for his attorney's incompetence, Lee would have known that accepting the plea agreement would *certainly* lead to deportation. Going to trial? *Almost* certainly. If deportation were the "determinative issue" for an individual in plea discussions, as it was for Lee; if that individual had strong connections to this country and no other, as did Lee; and if the consequences of taking a chance at trial were not markedly harsher than pleading, as in this case, that "almost" could make all the difference. Balanced against holding on to some chance of avoiding deportation was a year or two more of prison time. Not everyone in Lee's position would make the choice to reject the plea. But we cannot say it would be irrational to do so.

582 U.S. at 371. Here, as in *Lee*, the petitioner maintains that, if he had been correctly advised as to the risk of deportation, he would have gone to trial. He credibly claims that the virtual certainty of deportation back to a country that he left as a child and with which he had no familiarity outweighed a reduction in years. ECF No. 579-1 at 3-6. Accordingly, I find the second prong of *Strickland* satisfied. Ineffective assistance of counsel is a fundamental error that satisfies the fourth element of a petition for *coram nobis*. *See Kwan*, 407 F.3d at 1014. Petitioner is entitled to the writ.

### V. The Government's Remaining Arguments

The government offers several other arguments against issuance of the writ, none of which are availing. It argues that petitioner was untruthful during his plea colloquy by stating that no other promises had been offered to him to induce a guilty plea. ECF No. 599 at 9. This was not untruthful because there is no evidence of other promises made to him. Reliance on his counsel's advice should not be understood to be a separate "promise," but rather as an incorrect interpretation of the terms of the plea agreement and the consequences of its acceptance.

The government also contends that permitting petitioner to attack his conviction by way of a writ of *coram nobis* undercuts the gatekeeping function of § 2255. *Id.* at 7. But there was, as

explained above in the discussion of petitioner's diligence, no reason for petitioner to file a § 2255 motion. His counsel's ineffective assistance only came to light after his release, in 2021, when a motion under § 2255 was no longer available to him. *See Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994) ("[I]f the sentence has been served, there is no statutory basis to remedy the 'lingering collateral consequences' of the unlawful conviction. . . . Recognizing this statutory gap, the Supreme Court has held that the common law petition for writ of error coram nobis is available in such situations . . . .") (internal citations omitted).

Accordingly, it is RECOMMENDED that petitioner's petition for writ of error coram nobis, ECF No. 579, be GRANTED and his plea and conviction be VACATED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within fourteen days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   May 12, 2025

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE